UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SCOT J. COHEN,
THE MERAV ABBE IRREVOCABLE TRUST,
ABBE BERMAN FOUNDATION,
COLEMAN ABBE,
CLEVELAND OVERSEAS LIMITED,
PHILIP W. MIRABELLI,
VERTICAL VENTURES LLC,                          DECLARATION
MARTIN D. GOLDMAN,                              IN OPPOSITION
ARI S. GOLDMAN,
DAN BURKO,                                      Case No.: 09CV4003
ABCO QUALITY ENGINES AND TRANSMISSIONS,         (RWS)
INC. &
ELLIS INTERNATIONAL, L.P.,

                                    Plaintiff(s),

            -against-

STEVE STEVANOVICH,
GEOFFREY TIRMAN,
MORGAN STANLEY & CO., INC.,
THE GOLDMAN SACHS GROUP, INC.,
J.P.MORGAN CLEARING CORP.,
JPMORGAN CHASE & CO.,
BANC OF AMERICA SECURITIES, LLC,
THE BANK OF NEW YORK MELLON, CORP.,
CREDIT SUISSE (USA), INC.,
DEUTSCHE BANK SECURITIES, INC.,
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. &
UBS FINANCIAL SERVICES, INC.,

                        Defendant(s).
------------------------------------------------------------------X

## TABLE OF CONTENTS

|                              | Page |
|------------------------------|------|
| 1)   PRELIMINARY STATEMENT   | 3    |
| 2)   STATEMENT OF FACTS      | 6    |

3)      ARGUMENT                                                    7

4)      POINT I - PLAINTIFFS FURNISHED THE DETAILS OF FEDERAL SECURITIES
        LAW VIOLATION                                             12

5)      POINT II PLAINTIFFS' STATE-LAW CLAIMS SHOULD NOT BE DISMISSED.
                                                                  30

6)      CONCLUSION                                                33

## PRELIMINARY STATEMENT

1.      Financial Institution Defendants have not denied in a single statement that they were involved in unlawful, unfair, or fraudulent business acts or practices, and/or participated in those acts, and/or aided and abetted, in their full 34 page Motion to Dismiss the Complaint for Failure to State a Claim. Instead Defendants have tacitly acknowledged their involvement in the subject activity. On this sole reason itself Defendants Motion to Dismiss should be denied in all respects.

2.      Financial Institution Defendants involved in this case are also involved in a similar action filed in the Superior Court California, Case No. – CGC-07-460147 in which Overstock.com is Plaintiff. This shows that Financial Institution Defendants are habitual offenders and they should be punished. Overstock.com suit was filed on the same grounds as Plaintiffs' are claiming in this case and accusing the almost same Defendants. Overstock.com case alleges that Defendants were participating in a "massive" scheme to manipulate Overstock.com shares by allowing naked short selling, in which a trader doesn't properly borrow stocks before selling them short. That leads to trade settlement failures and puts downward pressure on a stock. In the Overstock.com case as well, Defendants first filed Motion to Dismiss rather to provide an Answer to Complaint. In Overstock.com case the California state court held that company has made a viable case for its claims of market manipulation and dismissed the Defendants Motion.

3.      Furthermore Plaintiffs' object to Financial Institution Defendants language in their Motion to Dismiss, that Plaintiffs' Complaint fails to state the claim.

4.      Defendants' Motion is frivolous. However, given the nature of its misleading assertions, and the off-chance that the Honorable Court may not share Plaintiff's evaluation of

the Motion, Plaintiff wishes to respond.

5.      Defendants are alleging that Plaintiffs do not identify a single trade by any Financial Institution Defendant. Plaintiffs' in their Complaint have identified dates on which Naked Short Selling took place. Plaintiffs annexed as Exhibit B to the Complaint list of dates when SulphCo stock was reported on the Regulation SHO threshold securities list during the relevant periods. This List shows when Naked Short Selling took place concerning SulphCo stock as reported by NYSE Euronext in its capacity as a Self Regulatory Organization (SRO) to the SEC. The SEC enacted Regulation SHO in January 2005. The main purpose this act was to target abusive naked short selling by reducing failure to deliver securities and by limiting the time in which a broker can permit failures to deliver. In order to further specify and provide detailed evidences against Defendants, Plaintiffs' have already requested documents from NYSE Euronext which will further specify Financial Institution Defendants involvement and this will be done through the process of Discovery. NYSE Euronext refuses to disclose and has opposed said disclosure vigorously raising questions of conspiracy that NYSE Euronext and Defendants' are working in connivance.

6.      Plaintiffs in the Complaint claim that Defendants have violated (i) the Securities and Exchange Act, 1934 - Sections 9, 10, 18 and 20, United States Code, Title15 - Sections 78(i), 78 (j), 78(r) and 78(t), (ii) Code of Federal Regulations, Title 17 - § 240.10b-5 and also claim (iii) Conspiracy and (iv) Common law Fraud. Plaintiffs have provided all the information and evidences which are in their possession and necessary to establish claims under above referred sections. The details and specificity which Financial Institution Defendants are alleging are matter of Discovery.

7.      Financial Institution Defendants are claiming that Plaintiffs do not allege that they

are their customers; that they acquired their SulphCo shares from or sold their shares to any Financial Institution Defendants; that they met, spoke with, or communicated in any way with any Financial Institution Defendants; or that they ever transacted any business with any Financial Institution Defendants and also that Complaint does not identify which Plaintiffs sold, how many shares were sold, when those shares were sold, the price they received, or whether those sales were at a loss. In response to this Plaintiffs state that it is not appropriate at the initial stage of the case and it is also not prerequisite for the filing of the foregoing action and is a matter of Discovery.

8.      Plaintiffs in the Complaint claim that Defendants have violated (i) the Securities and Exchange Act, 1934 - Sections 9, 10, 18 and 20, United States Code, Title15 - Sections 78(i), 78 (j), 78(r) and 78(t), (ii) Code of Federal Regulations, Title 17 - § 240.10b-5 and also claim (iii) Conspiracy and (iv) Common law Fraud and the necessary elements to claim violation under these sections and common law are sufficiently indentified in order to survive this Motion to Dismiss and establish claim that would entitle Plaintiffs to Relief.

9.      A Motion to Dismiss should be granted only where "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must take all well pleaded facts as true and construe them in favor of Plaintiff. Calhoun v. Hargrove, 312 F.3d 730, 733 (5th Cir.2002). Therefore Financial Institution Defendants' disagreements with the factual allegations in the complaint are not relevant and the Motion to Dismiss should be denied in all respects.

10.     Financial Institution Defendants almost every where in their Motion to Dismiss the Complaint are citing cases applicable to Class Actions and/or Suits filed under Private

Securities Litigation Reform Act (PSLRA) which is applicable to Securities Class Action and PSLRA imposes new rules on securities class action lawsuits. The instant action is not a class action.

"Private Securities Litigation Reform Act and its heightened pleading standard applied to private class action filed after its enactment. Section 108 of Private Securities Litigation Reform Act." In re Silicon Graphics, Inc. Securities Litigation, N.D.Cal.1997, 970 F.Supp. 746.

## STATEMENT OF FACTS

11.    This is a securities action brought by Plaintiffs who purchased or otherwise acquired the common stock of SulphCo, Inc. ("SulphCo"), against Defendants for violations of (i) the Securities and Exchange Act, 1934 - Sections 9, 10 and 20, United States Code, Title15 - Sections 78(i), 78 (j), 78(r) and 78(t), (ii) Code of Federal Regulations, Title 17 - § 240.10b-5; Defendants' illicit conduct further gives rise to claims for (iii) Conspiracy and (iv) Common Law Fraud.

12.    Defendants engaged in a massive, illegal stock market manipulation scheme. Defendants engaged themselves in a series of transactions from the year 2004 to Present and continuing, in order to create actual or apparent active trading in the SulphCo stock or to depress the price of the stock for the purpose of inducing the purchase or sale of the stock by others. Defendants, during the subject period, have executed, as principal and agent, short sales of SulphCo stock without first borrowing the stock or ensuring that the stock can be borrowed to settle the short sale. Defendants have intentionally failed to borrow SulphCo stock to settle the short positions. Due to the said short selling, SulphCo stock prices came down heavily which resulted in immense losses to Plaintiffs as well as precluded them from selling their shares. This

short selling is done by Defendants with the sole motive of making huge profits to themselves and resulting in huge losses to Shareholders of the stock. Exhibit A is a list of SulphCo stock price during the relevant period, indicating the fluctuations in stock price and volumes of the stock traded.

## **ARGUMENT**

13.    As per Financial Institution Defendants' allegations, Plaintiffs' Complaint does not identify any supposedly manipulative naked short sales by any Financial Institution Defendants. Plaintiffs have attached said details as Exhibit B to the Complaint as it was reported on Regulation SHO Threshold Securities list during the relevant period which clearly identifies SulphCo Stock being subjected to Naked Short Selling.

14.    As per Financial Institution Defendants, SEC has stated that a stock's inclusion on a "threshold" list "does not necessarily mean that any improper activity occurred or is occurring" because there are many reasons why a security might appear and remain on a "threshold" list. SEC, Division of Market Regulation: Key Points About Regulation SHO, IV (B).  However, the SEC further states an equity security will APPEAR on a threshold list if it meets the definition of a threshold security set forth in Regulation SHO, meaning that failures to deliver the have reached an aggregate of 10,000 shares or greater at NSCC for five consecutive settlement days and are equal to 0.5% of total shares outstanding." This SEC statement talks about appearance of a security on Regulation SHO list on certain occasions but in this case SulphCo's stock continually and for extended periods of time remained on Regulation SHO list.

15.    Financial Institution Defendants state that Plaintiffs' Complaint is silent concerning the amount of the alleged bribe, when it was supposedly made, or who was present at the time. These are matters of Discovery and it is also not prerequisite for filing of any of the foregoing causes of action. Further, Defendants are in possession of the requested information.

16.    Financial Institution Defendants in their motion have stressed on the point that Plaintiffs must satisfy the heightened pleading requirement of Rule 9(b). ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). But Financial Institution Defendants failed to notice that the case cited by them is a class action matter which the current litigation is not and further that the "PRIVATE SECURITIES LITIGATION REFORM (PSLR) does not apply to private litigation as it imposes new rules on securities class action lawsuits.

Pursuant to PSLR SEC. 27, PRIVATE SECURITIES LITIGATION (15 U.S.C.A. § 77z-1), (a) PRIVATE CLASS ACTIONS, (1) IN GENERAL - The provisions of this subsection shall apply to each private action arising under this title that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.

17.    In California Public Employees' Retirement System v. Chubb Corp., C.A.3 (N.J.) 2004, 394 F.3d 126  it was held that to satisfy heightened requirements of Private Securities Litigation Reform Act (PSLRA) for pleadings of fraud made on information and belief, Plaintiffs are not required to plead with particularity every single fact upon which their beliefs concerning alleged false or misleading statements are based, but rather need only plead with particularity sufficient facts to support those beliefs.

18.    The materiality of a misstatement, for purposes of a securities fraud claim, depends upon whether there is a substantial likelihood that a reasonable shareholder would

consider it important in deciding how to act. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b). In this case as well the SulphCo stockholders relied on the misstatement of Defendants which was published in the article and relying on that they started selling the stocks which decreased the price of SulphCo and this caused drastic depression in stock price of SulphCo securities.

19.    Apart from PSLRA Financial Institution Defendants are also alleging that Plaintiffs complaint did not satisfy Rule 9(b) in which defendants are clumped together in vague allegations. As per FRCP Rule 9(b) - Fraud or Mistake; Conditions of Mind - In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Financial Institution Defendants failed to acknowledge that the act of Naked Short Selling was not for one day but Defendants continued this for over a year. This is clear evidence of Defendants' malice, intent and knowledge of wrongdoing. In Castillo v. Norton, D.Ariz.2003, 219 F.R.D. 155, Former employee asserting discrimination action against former employer was not required to identify the employees involved in the alleged discrimination, the dates of the alleged discrimination, other circumstances surrounding the alleged discrimination or other facts, in order to survive employer's motion to dismiss for vagueness, under the federal notice pleading rule.

20.    Financial Institution Defendants apart from alleging requirements of Rule 9(b) and the PSLRA, Financial Institution Defendants also alleges that Complaint must satisfy the plausibility standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which applies to all civil actions. The case cited by Financial Institution Defendants is not at all similar to Plaintiffs' Complaint. Said case is a class action brought by Consumers against incumbent local

exchange carriers (ILECs) alleging antitrust conspiracy, in violation of the SHERMAN ACT, both to prevent competitive entry into local telephone and Internet service markets and to avoid competing with each other in their respective markets. As far as Financial Institution Defendants contention that Complaint must satisfy the plausibility standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which applies to all civil actions, it refers to Federal Rules of Civil Procedure Rule 8 which applies to all civil actions. As per Federal Rules of Civil Procedure Rule 8 - General Rules of Pleading,

(a) Claim for Relief. A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

21.     Plaintiff in the Complaint has already satisfied the Federal Rules of Civil Procedure Rule 8 - General Rules of Pleading. Plaintiffs' Complaint has specified claims for relief, unlawful acts, approximate dates of Defendants unlawful acts and also attached Exhibits showing the evidence that Financial Institution Defendants claims is not conclusionary.

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), court has held that "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."

22.     As per Iqbal, 129 S. Ct. at 1949, Financial Institution Defendants are contending that Plaintiffs have not specified (1) the fraudulent transactions each Financial Institution

Defendant purportedly executed; (2) the misrepresentations made by each Financial Institution Defendant upon which each Plaintiff supposedly relied; (3) the injury suffered by any Plaintiff; or (4) the link between the Financial Institution Defendants' purported misconduct and the loss, if any, suffered by Plaintiffs. That the Complaint improperly rests upon conclusory allegations and generalized claims of misconduct by the Financial Institution Defendants as a group and as such, fails to state a claim.

In response to this Plaintiff wants to state that this Iqbal case is not at all is similar to this case. This lawsuit was filed by a citizen of Pakistan and a Muslim against 53 current and former federal officials, including 19 John Doe prison guards, as well as Ashcroft and FBI Director Robert Mueller, he claimed that while he was in detention, he was mistreated in violation of his constitutional rights. Nevertheless this case states that Plaintiffs cannot survive a motion to dismiss by relying on conclusory allegations; they must instead set forth specific facts that establish "a plausible claim for relief" as viewed through the lens of "common sense." The Court explained that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

In this case Plaintiffs' have given evidence that the SulphCo was on Regulation SHO list for over one year, SulphCo stock price drastically dropped to $9.79 from $19.70 on January 23, 2006, the day said article was published, Financial Institution Defendants have not denied in their motion at a single place that they were never involved, participated, aided, and assisted in the said illegal activity but instead tacitly Defendants have acknowledged the same. Plaintiffs' have already requested the documents from NYSE to substantiate and to give further proof against the Defendants.

## POINT I - PLAINTIFFS PROVIDED THE DETAILS OF FEDERAL SECURITIES LAW VIOLATION.

23.     Financial Institution Defendants are deciding by themselves that Plaintiffs have not adequately alleged market manipulation under Sections 9(a) and 10(b) of Securities and Exchange Act, 1934.

In SEC v. Malenfant,  in order "[t]o make out a violation of subsection 9(a)(1) ..., a plaintiff must prove the existence of (1) a wash sale or matched orders in a security [,] (2) done with scienter [and] (3) for the purpose of creating a false or misleading appearance of active trading in that security ..." Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1163 (5th Cir.1982) (footnotes omitted). As per the forgoing Plaintiffs must prove the existence but not to identify of each wash sales and matched orders which is done with scienter for the purpose of creating a false or misleading appearance of active trading in that security. Plaintiffs' Complaint states 1) the dates on which Naked Short Selling took place which is clear proof of existence of wash sales and matched orders as well as illegal short selling 2) that this illegal activity continued for over a year which is a clear evidence that it is done with scienter for the purpose of creating a false or misleading appearance of active trading in that security.

24.     To make out a subsection 9(a) (2) claim, the Plaintiff must show "(1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter and (3) for the purpose of inducing the security's sale or purchase by others ... Id. at 1164 (footnotes omitted); Plaintiffs' in the complaint have adequately claimed these above factors through Exhibits A & B of the

subject Complaint which is evidencing the volumes of the SulphCo stock traded and its corresponding prices and list of dates when SulphCo stock was reported on the Regulation SHO threshold securities list during the relevant period respectively. Plaintiffs would provide further details on Defendants involvement once the NYSE Euronext provides the records previously demanded from them.

25.    To state a cause of action for securities fraud under section 10(b) and Rule 10b-5 "Plaintiffs must plead with particularity the manipulative scheme itself, the intent to defraud the investing public, reliance on the integrity of the market and resulting damages." In re Initial Public Offering Secs. Litig., 241 F.Supp.2d 281, 296 (S.D.N.Y.2003). In the Complaint Plaintiffs' have stated that Defendants in conjunction made False and misleading statements which raises rumors in the market and Defendants were also involved in the naked short selling which created an impression in the market that a large number SulphCo shares were available and this made the shareholders believe that stock price would come down resulting in heavy losses.   This Manipulative scheme of Defendants was clearly with intent to defraud the investing public.

In the market the value of a stock is determined by the basic relationship between supply and demand. If many people want a stock (demand is high), then the price will rise. If a few people want a stock (demand is low), then the price will fall. So here Defendants being aware of the basics, created and impression in the market that more stock is available and investing public started selling the stock which obviously results in  losses, unless you were Defendants.

This section and rule 10b-5 promulgated there under were intended to provide cause of action for any Plaintiff who suffers injury as result of manipulative or deceptive practices made in connection with his or her sale or purchase of securities. Norris v. Wirtz, C.A.7 (Ill.) 1983,

719 F.2d 256, certiorari denied 104 S.Ct. 1713, 466 U.S. 929, 80 L.Ed.2d 185. Securities Regulation

26.    Financial Institution Defendants in their motion have stated "Complaint does not assert that the parties to the alleged short sales were anything other than bona fide buyers and sellers trading at the reported price of the transaction. The fact that the seller was allegedly unable to deliver the security on the settlement date—three days after the transaction—does not transform that legitimate sale into unlawful market manipulation." This statement makes it clear that Defendants don't deny in engaging illegal activity but tacitly acknowledge that they were involved in the activity and their act was willful and it was in conjunction with other Defendants. This action of failure to deliver the stock did not happen for one day and not by one Defendant, it happened with the help of all Defendants and for approximately one year it continued which causes great depression in SulphCo stock price and clearly it was illegal.

In Securities and Exchange Commission v. RHINO ADVISORS, INC. and THOMAS BADIAN, Civ. Action. No. 03 civ 1310 (RO) (Southern District of New York), Defendants had paid jointly and on several basis a $1,000,000 Million as penalty for contributing to a decline in the price of Sedona's stock price by engaging in large scale short selling for similar actions.

27.    Defendants alleges that the short selling activity stated in the Complaint does not demonstrate that the Financial Institution Defendants distorted the price of SulphCo stock and does not constitute "willful conduct designed to deceive or defraud investors" with regard to market activity in SulphCo stock. In reply to this Plaintiff wants to highlight the Volumes of trading on those dates when SulphCo was on regulation SHO list. By taking a glance at the Exhibits attached in the Complaint any one can conclude that for keeping the Company on Regulation SHO list for more than a year amounts to willful intention on behalf of Defendants

and this act clearly shows the manipulative intent of Defendants which resulted in huge loses.

28.    Defendants are citing that, "In a release regarding Regulation SHO, the SEC expressly rejected the theory that naked short sales create "phantom" or "counterfeit" shares. Naked short selling has no effect on an issuer's total shares outstanding." It is true that SEC has stated that naked short selling would not increase a company's outstanding shares but complaint discusses about false appearances of Stocks which creates an impression in the market that large number of shares are available in the market. In the market the value of a stock is determined by the basic relationship between supply and demand. If many people want a stock (demand is high), then the price will rise. If a few people want a stock (demand is low), then the price will fall. So here Defendants being aware of the basics, created an impression in the market that more stock is available and investing public started selling the stock which results in losses.

In the Complaint Plaintiff they are claiming that Naked Short Selling has no effect on issuer's total shares outstanding but it created false perception in the market which depresses the price of SulphCo Stock.

In overstock.com case it was claimed that Defendants engaged in scheme to manipulate the companies' stock by allowing naked short selling. Defendants in this case also filed a motion to dismiss the Overstock suit which was denied in July 2007.  That suit accuses the Financial Institutions of participating in a "massive" scheme to manipulate Overstock.com shares by allowing naked short selling. California Superior Court's Judge John Munter, rejected the Financial Institution Defendants arguments that trade settlement failures do not create phantom shares. It is the phantom shares that allegedly put excess downward pressure on a stock.

29.    On the official website of U.S. Securities & Exchange Commission expressly stated that Naked Short Selling has negative effects on the market. Fraudsters use naked short

selling as a tool to manipulate the market and market manipulation is illegal.

V. Answers to Frequently-Asked Questions from Investors

Question No. 2:        Naked short selling, however, can have negative effects on the market. Fraudsters may use naked short selling as a tool to manipulate the market. Market manipulation is illegal. The SEC has toughened its rules and is vigilant about taking actions against wrongdoers. Fails to deliver that persist for an extended period of time may result in a significantly large unfulfilled delivery obligation at the clearing agency where trades are settled. Regulation SHO is intended to address these effects by reducing the number of potential failures to deliver, and by limiting the time in which a broker can permit a fail to deliver to persist. For instance, as explained above, Regulation SHO requires brokers and dealers to close-out the open fail-to-deliver positions in "threshold securities" (i.e., securities that have experienced a substantial number of extended delivery failures) that have persisted for 13 consecutive settlement days.

So Defendants contention that "short selling—even in high volumes—is not, by itself, manipulative, is false. In this case Naked Short Selling has Negative effect and Defendants continued to fail to deliver for an extended period of time which depressed the SulphCo Stock price which is illegal.

30.     Financial Institution Defendants are claiming that Plaintiffs Have not adequately alleged any actionable misrepresentations by the Financial Institution Defendants. Plaintiffs in the complaint have clearly stated that Defendants individually and collectively, each and all of them agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and participated , aided, abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

31.    In re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION Mark NEWBY, et al., Plaintiffs v. ENRON CORPORATION, et al., Defendants, Rule 10b-5(a) and (c) allowed a suit, based on conduct, against defendants who, acting with scienter, employed a material device, contrivance, scheme or artifice or participated in a course of business that operated as a fraud on sellers and purchasers of stock even if those defendants did not make a materially false or misleading statement or omission.

Plaintiffs' evidence that connects misrepresentation to the Financial Institution Defendants are the Exhibits that are attached in the complaint showing the high volumes of trading, indicating decreased SulphCo stock price and showing the continuous pattern of Defendants act which kept SulphCo on Regulation SHO list during the subject period.

32.    Financial Institution Defendants' are claiming that a Plaintiff must plead that the Defendants made a false statement or omitted a material fact. The ENRON suit was allowed against defendants who, acting with scienter, employed a material device, contrivance, scheme or artifice or participated in a course of business that operated as a fraud on sellers and purchasers of stock even if those defendants did not make a materially false or misleading statement or omission. So the statement that Plaintiffs have not pled any misstatements or omissions attributable to any Financial Institution Defendant is erroneous and irrelevant. Plaintiff has provided the statements, conducts and documents, sufficient for drawing the inferences that Defendants acted, participated, and aided the said illegal activity individually and collectively.

33.    Financial Institution Defendants are citing Winkler v. Wigley, 242 F.3d 369 (2d Cir.2000) (unpublished opinion) the Second Circuit held that an outside public relations firm and an outside director and shareholder could not be liable for misleading statements contained in a company press release because the misleading statements were made by, and attributed to, the

company's president. It is undisputed that the press release it is pure responsibility of company's president and directors involved in press release, though the citation aid Financial Institution Defendants as they were acting in concert and profiting with the Co Defendants making the statements.

34.    Defendants have contended in their motion that Plaintiffs simply assert, without any supporting factual allegations, that the Financial Institution Defendants "worked together with" Tirman and Stevanovich "without disclosing the unscrupulous collaboration." This is absolutely false and erroneous. Plaintiffs' in the complaint have clearly stated that all Defendants either directly participated and/or assisted each other in achieving this aim. Plaintiffs' suffered loss not only because of Publishing of article in the Barron's Magazine but also Defendants active participation and facilitation in the naked short selling in the market. This fact is clear from Defendants tacit acknowledgement in the motion that all Defendants purchased SulphCo securities and failed to deliver same securities not only on one day but continuously involved in this process for over one year which drastically affected the price of the SulphCo securities. These facts are enough to make liable Defendants for their illegal acts and further the facts will come to light through out the course of discovery.

35.    it is undisputed that, on January 26, 2006 Barron's article by William Alpert was published. Financial Institution Defendants allege that as per applicable statute of limitations this claim would be barred because the article was published more than two years before this action was commenced. But in this case Plaintiffs' were not aware of facts at the time when this article was published and it was also not known that this is result of proper planning, assistance and collusion with other Defendants. As soon as it is known to the Plaintiff this complaint was filed in the court, so within one year of Discovery of facts this action was filed.

As per 15 U.S.C.A. § 78r(c) - No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued. So this complaint is well within time limitation provided under this section.

36.    Financial Institution Defendants are claiming that to plead a claim under Section 9(a) and Section 10(b), plaintiffs must "state with particularity facts giving rise to a strong inference that each defendant acted with scienter." In response to this Plaintiffs want to state that Defendants conduct of acquiring the SulphCo Securities and failing to deliver the same securities on those settlement days for over continuous period of one year amounts to clear evidence as well as a strong inference that each Defendant acted with scienter in order to achieve the said illegal goal.

37.    In a securities fraud action, plaintiffs were not required to specify defendant's status as primary defendant or aider and abettor in order to satisfy requirement that fraud be pleaded with particularity; Plaintiffs satisfied particularity requirement with regard to alleged misrepresentations by specifying dates, locations and parties participating in conversations in which alleged misrepresentations were made, nature of alleged misrepresentations, party making them, and their consequences. In this Complaint Plaintiff have already specified the statements (Article in Barron's Magazine) and have also indentified the speaker (Geoffrey Tirman) and also specified the when and where it was made (Barron's Magazine on January 23, 2006) and its consequences on SulphCo stock price. So Complaint has adequately satisfied Section 9(a) and Section 10(b) of Securities Exchange Act, 1934.

38.    As per Securities Exchange Act § 9 (a)- Prohibiting manipulation of security prices, to show violation of under this provision, Plaintiff must plead and prove series of

transactions in security creating actual or apparent trading in that security or raising or depressing price of that security, that transactions were carried out with scienter, for purpose of inducing security's sale or purchase by others, that transactions were relied upon by plaintiff, and that transactions affected plaintiff's purchase or selling price. See Ray v. Lehman Bros. Kuhn Loeb, Inc., N.D.Ga.1984, 624 F.Supp. 16.

As per the above stated law Plaintiffs in the Complaint have attached Exhibits' to prove a series of transactions in security creating actual or apparent trading in that security which was diminishing the price of SulphCo security for continuous period, and that transactions were carried out with scienter because Defendants were having profits out of theses activity and this was continuous transactions which cannot be carried out for so long without scienter and which in turn affected Plaintiff's selling price.

Defendants were engaged in naked short selling for over period of one year which was bringing down the price of SulphCo securities. This is the clear evidence that Defendant deliberately involved into naked short selling at the relevant period.

39.    In Marksman Partners, L.P. v. Chantal Pharmaceutical Corp., C.D.Cal.1996, 927 F.Supp. 1297. Buyers of securities satisfied scienter requirement, for stating cause of action for securities fraud under Securities Exchange Act § 10(b), as heightened by Private Securities Litigation Reform Act (PSLRA), by setting forth facts constituting strong circumstantial evidence of conscious behavior. Similarly Plaintiffs have also described the facts in details attaching the Regulation SHO list evidencing the depressing effect upon stock price of SulphCo stock which is strong circumstantial evidence of Defendants conscious behavior.

40.    Plaintiffs have adequately pleaded that Financial Institution Defendants had a motive to commit Fraud. In Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87,

to escape dismissal of a securities fraud complaint, the plaintiff must demonstrate that the fraud caused the plaintiff to engage in the transaction, and that it also caused the harm actually suffered. Securities Exchange Act of 1934, § 21D(b)(4), as amended, 15 U.S.C.A. § 78u-4(b)(4); 17 C.F.R. § 240.10b-5. In this Complaint it is well pleaded Plaintiffs were harmed by Defendants' conduct and they were either precluded from selling their stock or were forced to sell the stock at a diminished price.

41.    Further Defendants engaged themselves in a series of transactions and illegal Naked Short Selling of SulphCo stock for over a period of year and made profits, and this was not simple transactions making simple profit this was properly planned profit making transaction for over a year which lead to heavy profits to Defendants and losses to Plaintiffs. Exhibit A to Annexed to Complaint is a shows SulphCo stock price during the relevant period, indicating the fluctuations in stock price and high volumes of the stock traded during the relevant days.

42.    On January 20, 2006, the last trading day before the publication of the Barron's Magazine Article, SulphCo stock traded at as high as $19.70. On January 23, 2006, the day said article was published, the value of SulphCo stock drastically dropped to $9.79. SulphCo made no corporate announcements which might have caused the unusual drop in price and fluctuation in volumes. This was only because of Defendants' acts  which resulted in heavy losses to SulphCo's common stock shareholders beginning on October 26, 2005. It is true that all firms in the securities industry want to increase profits and all individuals are assumed to desire to increase their compensation but this is not justifiable at the cost of the heavy losses to other parties through the methods engaged in by Defendants.

In Carol Novak v. Sally Frame, 216 F.3d 300 (2nd Cir. 2000), Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful

nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged. So as per facts in Complaint it is clear that Defendants had both motive and opportunity to commit fraud.

While motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of finding that securities fraud complaint gives rise to "strong inference" of scienter, within meaning of Private Securities Litigation Reform Act (PSLRA), absence of motive allegation is not fatal. Tellabs, Inc. v. Makor Issues & Rights, Ltd., U.S.2007, 127 S.Ct. 2499, 551 U.S. 308, 168 L.Ed.2d 179.

While actual fraudulent statements or conduct alleged to constitute securities fraud, and fraud itself, must be stated with particularity, requisite intent of alleged speaker of fraud need not be alleged with great specificity. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j (b); 17 C.F.R. § 240.10b-5; Fed. Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

43. Financial Institution Defendants contention that Plaintiffs have failed to allege facts supporting a strong inference of conscious wrongdoing or recklessness is false and erroneous. Exhibits attached in the complaint are strong circumstantial evidence that Defendants involved, participated, aided, abated, and assisted in the illegal activity. Furthermore the details of wrongdoing by each individual can be easily indentified as soon as Plaintiffs get the documents demanded from NYSE.

By alleging facts that constituted strong circumstantial evidence of conscious misbehavior or recklessness on the part of defendants, intentional misconduct is easily identified since it encompasses deliberate illegal behavior, see Carol Novak v. Sally Frame 216 F.3d 300.

In a Conspiracy claim all Defendants are responsible for each others act. The law makes

each conspirator liable for the acts of every other conspirator done in pursuance of the conspiracy. The common purpose makes the acts of one the acts of all. See United States v. Sansone, 231 F.2d 887, C.A.2 1956.

44.    Financial Institution Defendants are alleging that SEC has not imposed an outright prohibition on naked short selling. This is true that simple naked short selling was not prohibited but the naked short selling which depresses the Stock price is illegal and prohibited. As previously discussed U. S. Securities & Exchange Commission expressly stated that Naked Short Selling has negative effects on the market. Fraudsters use naked short selling as a tool to manipulate the market and market manipulation is illegal. Naked short selling can have negative effects on the market. Fraudsters may use naked short selling as a tool to manipulate the market. Market manipulation is illegal. The SEC has toughened its rules and is vigilant about taking actions against wrongdoers.

In Stephenson v. Deutsche Bank AG, D.Minn.2003, 282 F.Supp.2d 1032, Securities broker-dealers' allegations regarding securities lenders' deliberate, orchestrated, and illegal manipulation of stock market, in manner that could only happen intentionally, were sufficient to give rise to inference of scienter required to state claim for manipulation of security prices under the Private Securities Litigation Reform Act (PSLRA). In this Complaint as well, Defendants acts of keeping the SulphCo stock on Regulation SHO list and assisting, participating, aiding and abating in naked short selling over a period of a year and this long illegal activity can happen only with intention sufficient to give rise to inference of scienter required to state claim for manipulation of security prices.

45.    Financial Institution Defendants Contention that Plaintiffs have not alleged that any of the Financial Institution Defendants made false statements, knew that they were false or

even knew that the statements were being made, Nor does the Complaint allege with any specificity what any Financial Institution Defendant's supposed role was in the publication of the challenged article is absolutely false and misleading. In the Complaint it is specified that Defendants individually and collectively, each and all of them agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and/or participated in those acts, and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other. Therefore all the Defendants knew that the statement was false and immediately after publication of article they entered into series of transaction in high volumes and in the end failing to deliver on settlement day. This was fully planned and executed by Defendants collectively. Therefore the SulphCo stock drastically dropped from $19.70 to $9.79 on January 26, 2006, the day said article was published.

46.    Financial Institution Defendants are stating that Plaintiffs have not pled facts supporting any legally cognizable loss. Nor have they adequately alleged any "causal connection between the manipulation or material misrepresentation and the loss. This is absolutely false and erroneous. In the Complaint Plaintiff have adequately claimed damages, both general and special, in the amount of One Billion Dollars. Evidence annexed in the complaint is clear proof that amount claimed for damages in the Complaint is loss caused by Defendants illegal activity. In order to specify, on January 20, 2006, the last trading day before the publication of the Barron's Magazine Article, SulphCo stock traded at as high as $19.70. On January 23, 2006, the day said article was published, the value of SulphCo stock drastically dropped to $9.79. During those days SulphCo made no corporate announcements which might have caused the unusual drop in price and fluctuation in volumes. This was only because of Defendants' profit motive intention which resulted heavy losses to SulphCo's common stock beginning on October 26,

2005.

47.     Financial Institution Defendants are citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, in which it was held that "an inflated purchase price will not by itself constitute or proximately cause the relevant economic loss needed to allege and prove loss causation." Inversely in the complaint Plaintiffs are claiming deflated price of stock, so this decision is not applicable to Plaintiffs' case.

48.     As per Securities Exchange Act, 1934, Section 21D of 4(b)4 Loss causation - In any private action arising under this chapter, the Plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.  So as per this Section Plaintiffs in the Complaint have adequately described the losses caused to Plaintiffs' by Defendants conduct. As per the Exhibits attached to the Complaint Plaintiffs have provided the date on which SulphCo was on Regulation SHO list and also list giving details of continuous price plunges immediately after the publication of article in the Barron's magazine during the relevant period. These details are clear proof of direct causal link between defendants' fraud and SulphCo losses.

49.     Defendants are claiming that Plaintiffs' in their complaint have stated that Financial Institution Defendants somehow depressed the market price of SulphCo stock is too speculative to measure and does not constitute a legally cognizable loss. This statement is false and erroneous. SulphCo Stock price was not somehow depressed by Defendants. Plaintiffs' in the complaint have specified that Defendants Manipulation Scheme and illegal Naked Short Selling depressed the market price of SulphCo stock and it is not somehow depressed and this is not at all speculative and constitutes a legally cognizable loss.

50.     Defendants are stating that Plaintiffs do not allege the amount of stock they

purportedly sold, the date(s) on which the stock was sold, or the price initially paid and then received for any stock. In reply to this it is not a prerequisite condition to state these specific details in the Complaint in order to claim losses caused by the Defendants illegal act and the foregoing is a proper forum for Discovery.

51.     Defendants are citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, in that Consumers brought putative class action against incumbent local exchange carriers (ILECs) alleging antitrust conspiracy, in violation of the Sherman Act, both to prevent competitive entry into local telephone and Internet service markets and to avoid competing with each other in their respective markets. Said case was dismissed by The United States District Court for the Southern District of New York because under Sherman Act's restraint of trade provision requires a complaint with enough factual matter, taken as true, to suggest that an agreement was made and also plaintiff could not prove the set of facts in support of said claim that would entitle them to relief, so the guidelines under the said case will not be applicable to the current action. Nonetheless Plaintiff has provided enough of details upon which relief will be granted and it is beyond a doubt, that plaintiff can prove facts in support of claim that would entitle him to relief.

52.     Financial Institution Defendants contention that Plaintiffs fail to allege even the most basic details of the Financial Institution Defendants' purported illegal short selling of SulphCo stock or identify any materially false or misleading statement in the Barron's article attributable to any Financial Institution Defendant. This is absolutely baseless and they completely failed to notice the importance of the exhibits attached in the complaint. Further details of Defendants involvement can easily be proved once the Plaintiff go through discovery and obtain documents demanded from NYSE.

53.     Financial Institution Defendants are claiming that the Complaint also fails to

plead that Plaintiffs relied in any way on Defendants' alleged wrongdoing. That this omission is fatal to Plaintiffs' claims under Sections 9(a), 10(b) and 18 of the Exchange Act; this is false and not acceptable as everything is discussed in the Complaint. With respect to material misrepresentations, reliance may be presumed in securities fraud action through the doctrine known as the fraud on the market presumption. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); see In re WorldCom, Inc. Securities Litigation, 219 F.R.D. 267. In securities fraud claims, reliance is presumed when the claim rests on the omission of a material fact. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b).

54.    Furthermore Financial Institution Defendants are stating in their motion that 'Plaintiffs claim that they were either precluded from selling their stock or were forced to sell the stock at a diminished price. But they never tie any of their own actions to anything the Financial Institution Defendants purportedly did. As to the Plaintiffs who allegedly were precluded from selling their stock  altogether, the Complaint admits that these Plaintiffs took no action and, therefore, could not have relied on the Financial Institution Defendants' alleged statements''. In order to clarify this issue, every person holds stock with intent to have profit by selling the same in the market in future. Defendants conduct of indulging into illegal naked short selling and market manipulation became the cause to sell the stock at lower price in order to get something out of nothing so some of the Plaintiffs' decided to sell the stock at lower price and some of them were precluded from selling and they were hoping that market in near future would come up and they can earn at least the invested amount so in this way they were precluded form selling the stock. Any person who holds a stock which does not pay a dividend only intends to sell them in future at higher market price to get the profit and do not intend at all to keep and/or retain the stock with them because this would not lead any profit to them but at the end it would be loss. So

after the Defendants engaged in illegal conduct, some of the Plaintiffs made a decision to sell in market and some decided to hold the stock in order to get some cost return. This act of prelusion and selling was influenced by Defendants conduct. This was the reason why in the complaint it is stated that 'Plaintiffs were either precluded from selling their stock or were forced to sell the stock at a diminished price.'

55.    Under section 20 of Securities Exchange Act, Liabilities of Controlling persons and persons who aid and abet violations can be claimed in the complaint. Under section 20(a) Defendant Barry Tierman and his cohorts and under sub section 20(b) other Financial Institution defendants would be held responsible. Financial Institution Defendants were primarily responsible for naked short selling and Defendant Barry Tierman and his cohorts were primarily responsible for making this false article against SulphCo which spreads many innuendos in the market resulting in losses to SulphCo's reputation in the market. Primary liability for securities fraud may be imposed not only on persons who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b). See S.E.C. v. First Jersey Securities, Inc.,101 F.3d 1450 and Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir.1994). in both cases court were of same opinion.

Aider and abettor in fraudulent scheme will be liable for damages even though his assistance of scheme consists of mere silence or inaction. Anderson v. Francis I. duPont & Co., D

Prerequisites to aider and abettor liability under securities law are existence of securities law violation by primary, as opposed to aiding and abetting, party, knowledge of violation on part of aider and abettor, and substantial assistance by aider and abettor in achievement of

primary violation. The Limited, Inc. v. McCrory Corp., S.D.N.Y.1988, 683 F.Supp. 387.

Liability as an aider-abettor attaches when one has actual knowledge of another's improper scheme plus intent to further that scheme, and he has given substantial assistance to the primary wrongdoer. Ingenito v. Bermec Corp., S.D.N.Y.1977, 441 F.Supp. 525.

56.     Plaintiffs in the complaint have given details of the names of persons who were involved, participated, aided, abated in the illegal activity and further specification is a matter of Discovery process and not a prerequisite condition at this stage of case.


## <u>POINT II PLAINTIFFS' STATE-LAW CLAIMS SHOULD NOT BE DISMISSED</u>

57.     Plaintiff can demand supplemental Jurisdiction in this claim. Supplemental jurisdiction is the authority of United States federal courts to hear additional claims substantially related to the original claim even though the court would lack the subject-matter jurisdiction to hear the additional claims independently. 28 U.S.C. § 1367 is a codification of the Supreme Court's rulings on ancillary jurisdiction (Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365 (1978)) and pendent jurisdiction (United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966)) and a superseding of the Court's treatment of pendent party jurisdiction (Finley v. United States, 490 U.S. 545 (1989)).

58.     As per U.S. Code § 1367 (a) Supplemental jurisdiction: In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

59.     Defendants are stating that Court should not exercise supplemental jurisdiction over Plaintiffs' state-law claims in the event that Plaintiffs' federal claims are dismissed. Defendants cannot decide whether the Federal Claims should be dismissed or granted. As per the discussion of Federal law in this opposition it is clear that Plaintiff have clearly specified the facts and it appears beyond doubt that the plaintiff can prove facts in support of claim which would entitle Plaintiff to relief. Accordingly, no Federal Claims should be dismissed under the light of above discussion. Hence Court can hear State law claims as additional claims because it is substantially related to the original claim and they form part of the same causes of action in the subject lawsuit.

60.     Defendants are contending that "If the Court elects to exercise supplemental jurisdiction over Plaintiffs' state-law claims, those claims likewise should be dismissed under Rule 12(b)(6) for failure to state a claim." As per Fed.R.Civ.P. 12(b)(6) Dismissal for failure to state a claim is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), quoted in Cates v. Int'l Tel. and Tel. Corp., 756 F.2d 1161, 1180 (5th Cir.1985); Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir.2005) (dismissal "is improper unless it is clear that the complaint could not be saved by any amendment").

61.     Under FRCP 15, this Court has the discretion to allow amendment of a pleading in the absence of undue delay, bad faith or dilatory motive on the part of the movant, when an intervening court decision changes the law and where re-pleading will not be futile nor prejudice the defendant.

62.     "In addition, "[when] deciding a motion to dismiss, the Court must accept the

Plaintiff's allegation of facts as true together with such reasonable inferences as may be drawn in its favor." Landy v. Mitchell Petroleum Technology Corp., 734 F.Supp. 608, 615 (S.D.N.Y.1990).

Dismissal for failure to state a claim is only proper when it appears beyond doubt that there are no set of facts in support of Plaintiff's claim which would entitle Plaintiff to relief. Harsco Corp. v. Segui, 91 F.3d 337, Fed. Sec. L. Rep. P 99,276.

In reviewing dismissal of complaint for failure to state a claim, complaint is to be construed in light most favorable to Plaintiff. Fed.Rules Civ.Proc.Rule 12(b)(6).

63.    As per Federal Rules of Civil Procedure (a) Amendments before Trial.

(1) Amending as a Matter of Course.

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

64.    In Lapin v. Goldman Sachs Group, Inc. 506 F.Supp.2d 221, District court ruled that on motion to dismiss securities fraud suit for failure to state a claim could take judicial notice of certain publications and publicly filed pleadings not cited in the complaint and of documents filed in another court to establish the fact of such litigation and related filings, not but to establish the truth of the matters asserted in the other litigation. Fed.Rules Evid.Rule 201.

In the event that this court is of opinion that Plaintiffs' Complaint lacks specificity as alleged by Financial Institution Defendants, Plaintiffs request an order granting them permission to Amend the foregoing Complaint under FRCP Rule 15.

## CONCLUSION

For the foregoing reasons and discussion, Plaintiffs request that the within motion be in all respects denied, together with such other, further, and different relief as to this Court seems just and proper and should pass the order to conduct further proceedings in this matter.

DATED:      New York, New York
January 4, 2010

Raphael Weitzman