UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SCOT J. COHEN, THE MERAV ABBE IRREVOCABLE TRUST, ABBE BERMAN FOUNDATION, COLEMAN ABBE, CLEVELAND OVERSEAS LIMITED, PHILIP W. MIRABELLI, VERTICAL VENTURES LLC, MARTIN D. GOLDMAN, ARI S. GOLDMAN, DAN BURKO, ABCO QUALITY ENGINES AND TRANSMISSIONS, INC. & ELLIS INTERNATIONAL, L.P.,

        Plaintiffs,

     -against-

STEVE STEVANOVICH, GEOFFREY TIRMAN, MORGAN STANLEY & CO., INC., THE GOLDMAN SACHS GROUP, INC., J.P. MORGAN CLEARING CORP., JPMORGAN CHASE & CO., BANC OF AMERICA SECURITIES, LLC, THE BANK OF NEW YORK MELLON, CORP., CREDIT SUISSE (USA), INC., DEUTSCHE BANK SECURITIES INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. & UBS FINANCIAL SERVICES, INC.,

        Defendants.

Case No. 09-CV-4003 (RWS)

---

**THE FINANCIAL INSTITUTION DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................... 2

1. Plaintiffs' discussion of the pleading standard misstates the law ............................................ 2

2. Plaintiffs fail to identify any misstatements or omissions by any Financial Institution
   Defendant ............................................................................................................................ 3

3. Plaintiffs' reliance on an "aiding and abetting" theory is outdated and misplaced ................... 3

4. Plaintiffs fail to allege market manipulation by any Financial Institution Defendant ............... 4

5. Plaintiffs do not adequately allege that the Financial Institution Defendants acted with
   scienter ................................................................................................................................ 5

6. Plaintiffs do not allege facts sufficient to demonstrate injury in fact or loss causation ............. 6

7. Plaintiffs' rehashed allegations of reliance are still defective .................................................. 7

8. Plaintiffs' Section 9(a) claim fails for additional reasons ........................................................ 8

9. Plaintiffs have abandoned their Section 18 claim ................................................................... 8

10. Plaintiffs do not adequately allege control person liability under Section 20 ......................... 9

11. Plaintiffs' state-law claims should be dismissed .................................................................... 9

12. Plaintiffs' request to amend their Complaint should be denied because any
    amendment would be futile ................................................................................................ 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009)..................................................................................................1, 2

ATSI Communications, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)..................................................................................................5

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)........................................................................................................1, 2

Blue Chip Stamps v. Manor Drug Stores,
    421 U.S. 723 (1975)......................................................................................................7 n.5

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
    511 U.S. 164 (1994)..............................................................................................4, 9, 9 n.7

Chill v. Gen. Elec. Co.,
    101 F.3d 263 (2d Cir. 1996).................................................................................................6

Cohen v. Citibank, N.A.,
    954 F. Supp. 621 (S.D.N.Y. 1996).......................................................................................9

Conley v. Gibson,
    355 U.S. 41 (1957)........................................................................................................2, 10

Dura Pharm., Inc. v. Broudo,
    544 U.S. 336 (2005)................................................................................................7, 7 n.6

Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008).........................................................................5, 6, 9

Erickson v. Horing,
    No. 99-1468, 2000 U.S. Dist. LEXIS 22432 (D. Minn. Oct. 23, 2000) ............................ 2-3

In re Citigroup Auction Rate Sec. Litig.,
    No. 08 Civ. 3095 (LTS), 2009 U.S. Dist. LEXIS 83046 (S.D.N.Y. Sept. 11, 2009) ................6

In re Enron Corp. Sec., Derivative & ERISA Litig.,
    610 F. Supp. 2d 600 (S.D. Tex. 2009) ................................................................................4

In re Nokia Oyj (Nokia Corp) Sec. Litig.,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)................................................................................10

In re NovaGold Res. Inc. Sec. Litig.,
    629 F. Supp. 2d 272 (S.D.N.Y. 2009)..................................................................................6

In re Trump Hotel S'holder Derivative Litig.,
    96 Civ. 7820, 1997 U.S. Dist. LEXIS 11353 (S.D.N.Y. Aug. 5, 1997) ...................................3

Joffee v. Lehman Bros., Inc.,
    410 F. Supp. 2d 187 (S.D.N.Y. 2006)............................................................................... 6-7

Lipton v. County of Orange,
    315 F. Supp. 2d 434 (S.D.N.Y. 2004)..................................................................................9

Regents of University of California v. Credit Suisse First Boston (USA),
    482 F.3d 372 (5th Cir. 2007) ...............................................................................................4

Ross v. A.H. Robbins Co.,
    607 F.2d 545 (2d Cir. 1979)................................................................................................9

Rutherford v. Katonah-Lewisboro Sch. Dist.,
    08 Civ. 10486 (CM), 2009 U.S. Dist. LEXIS 105872 (S.D.N.Y. Nov. 3, 2009) ......................2

Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc.,
    985 F. Supp. 427 (S.D.N.Y. 1997), rev'd on other grounds,
    186 F.3d 157 (2d Cir. 1999)................................................................................................3

Sobek v. Quattrochi,
    03 Civ. 10219 (RWS), 2004 U.S. Dist. LEXIS 24584 (S.D.N.Y. Dec. 9, 2004) .....................2

Stoneridge Investment Partners LLC v. Scientific-Atlanta, Inc.,
    552 U.S. 148 (2008)............................................................................................................4

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,
    531 F.3d 190 (2d Cir. 2008)................................................................................................6

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007).........................................................................................................5, 6

## Statutes and Rules

15 U.S.C. § 78u-4(b)(1) ................................................................................................................3

15 U.S.C. § 78u-4(b)(2) ................................................................................................................3

Fed. R. Civ. P. 9(b) ..................................................................................................................1, 2

Fed. R. Civ. P 12(b)(6)................................................................................................................10

Fed. R. Civ. P. 15(a)(2)...........................................................................................................1 n.1

-iv-

**Other Authorities**

Black's Law Dictionary (9th ed. 2009)..................................................................................8

SEC Division of Market Regulation: Key Points About Regulation SHO,
    http://www.sec.gov/spotlight/keyregshoissues.htm..................................................5

Section 14.3 of the S.D.N.Y. Electronic Case Filing Rules & Instructions ..............................1 n.1

The Financial Institution Defendants respectfully submit this reply in further support of their motion to dismiss the Complaint for failure to state a claim.[1] Although 32 pages long—and thus in violation of this Court's rules (see Individual Practices of Judge Robert W. Sweet, Rule 2(C))—Plaintiffs' "Declaration in Opposition" fails to identify any factual allegations in their Complaint that justify their far-fetched claims against the Financial Institution Defendants. In fact, Plaintiffs' Opposition does not contain a single citation to a paragraph of the Complaint.

Instead, Plaintiffs offer only naked assertions and conclusory statements directed at the Financial Institution Defendants as an undifferentiated group. Such assertions are devoid of concrete factual allegations and, as such, do not come close to satisfying the pleading standard of Twombly and Iqbal, much less the heightened pleading requirements of Rule 9(b) and the PSLRA. Nor can Plaintiffs state a claim simply by pointing to Exhibits A and B to their Complaint, which purport to show the price of SulphCo stock between 2004 and 2007 and the Reg. SHO "Threshold List" on certain days in 2005 and 2006, respectively. Those Exhibits provide no basis for inferring any misconduct by any of the Financial Institution Defendants, which are not even mentioned in either Exhibit. All those charts show is that SulphCo's stock price declined over time, which reflects the market's perception of the company's poor earnings outlook, and that overall short interest increased corresponding to that dire outlook.

Plaintiffs' Opposition also contains several clear misstatements of law regarding the applicable pleading standard and the existence of a private right of action under Section 10(b) for aiding and abetting, and it fails to address a number of the Financial Institution Defendants' arguments. Plaintiffs cannot defeat this motion by relying on wild accusations and conclusory

---

[1] On January 5, 2010, Plaintiffs attempted to file a First Amended Complaint ("FAC") without defendants' written consent or leave of the Court. See Fed. R. Civ. P. 15(a)(2). The FAC does not appear on the docket because it was not filed on the ECF/CM system in compliance with Section 14.3 of the S.D.N.Y. Electronic Case Filing Rules & Instructions. The FAC contains no new substantive allegations. Rather, it seeks to name UBS Securities, LLC as defendant in place of UBS Financial Services, Inc. Like the original Complaint, however, the FAC does not name UBS Securities, LLC as a "Defendant Stock Broker/Dealer" (see FAC ¶ 3), nor does it make any specific allegations as to any actions taken by anyone at UBS. Because it contains no new factual allegations, the FAC fails for the same reasons that the original Complaint failed. Defendant UBS Securities, LLC hereby joins in this motion to dismiss.

assertions, misstating the applicable law and simply ignoring the arguments to which they have no response.[2]

## ARGUMENT

**1. Plaintiffs' discussion of the pleading standard misstates the law.** In their Opposition (Opp'n ¶¶ 9, 60), Plaintiffs rely on the "no set of facts" language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957). As this Court knows, however, "[t]he old Conley v. Gibson rule, which long governed a complaint's adequacy, has been 'retire[d].'" Rutherford v. Katonah-Lewisboro Sch. Dist., 08 Civ. 10486 (CM), 2009 U.S. Dist. LEXIS 105872, at *31 (S.D.N.Y. Nov. 3, 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007)). Moreover, Plaintiffs go to great lengths attempting to distinguish the Supreme Court's decisions in Twombly and Iqbal on their facts, arguing that those cases are "not at all similar" to this case. (Opp'n ¶¶ 20, 22.) Twombly and Iqbal, however, "expounded the pleading standard for 'all civil actions,'" establishing a universal "plausibility" standard that does not turn on the particular facts presented in those cases. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009).

Beyond the "plausibility" requirement, Plaintiffs do not dispute that the Complaint must satisfy the heightened pleading requirements of Rule 9(b). (Opp'n ¶ 19.) They argue, however, that the PSLRA's heightened pleading standard applies only to class actions and thus does not apply here. (Id. ¶¶ 10, 16.) Plaintiffs are simply wrong. "While it is true that one of the purposes of the PSLRA was to remedy abusive class actions in securities fraud cases, it is well settled in this district that the PSLRA is not limited to class actions." Sobek v. Quattrochi, 03 Civ. 10219 (RWS), 2004 U.S. Dist. LEXIS 24584, at *14 (S.D.N.Y. Dec. 9, 2004). Courts have repeatedly rejected the contention advanced by Plaintiffs here, holding instead that the PSLRA's heightened pleading standard and other requirements apply to all private actions. See Erickson

---

[2] Plaintiffs' argument that the instant motion "should be denied in all respects" because the Financial Institution Defendants "have not denied in a single statement that they were involved in unlawful, unfair, or fraudulent business acts or practices, and/or participated in those acts, and/or aided and abetted" is bizarre. (Opp'n ¶ 1.) The Financial Institution Defendants have moved to dismiss the Complaint for failure to state a claim, and although no categorical denial is necessary at this time, they deny any involvement in any claimed misconduct.

v. Horing, No. 99-1468, 2000 U.S. Dist. LEXIS 22432, at *20-23 (D. Minn. Oct. 23, 2000); see also Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc., 985 F. Supp. 427, 430-31 (S.D.N.Y. 1997), rev'd on other grounds, 186 F.3d 157 (2d Cir. 1999); In re Trump Hotel S'holder Derivative Litig., 96 Civ. 7820, 1997 U.S. Dist. LEXIS 11353, at *3-4 (S.D.N.Y. Aug. 5, 1997); 15 U.S.C. § 78u-4(b)(1) & (2) (provisions apply to "any private action").

**2. Plaintiffs fail to identify any misstatements or omissions by any Financial Institution Defendant.** Like their Complaint, Plaintiffs' Opposition points to no omission of material fact by any Financial Institution Defendant and attempts to rely on alleged misstatements made solely by others. This is fatal to any Section 10(b) claim based on an alleged misstatement or omission. Plaintiffs summarize their misstatement claim as follows: "Plaintiff [sic] have already specified the statements (Article in Barron's Magazine) and have also identified the speaker (Geoffrey Tirman) and also specified the [sic] when and where it was made (Barron's Magazine on January 23, 2006) and its consequences on SulphCo stock price." (Opp'n ¶ 37.)[3] Yet Plaintiffs fail to identify any factual allegations that supposedly connect any Financial Institution Defendant to any purported misstatements by Geoffrey Tirman in Barron's. Contrary to Plaintiffs' assertion (id. ¶ 31), the Exhibits attached to their Complaint "showing the high volumes of trading, indicating decreased SulphCo stock price and showing" that SulphCo appeared on the Reg. SHO Threshold List for more than a year do not "connect[]" the Financial Institution Defendants to any alleged misstatement (or anything else for that matter).

**3. Plaintiffs' reliance on an "aiding and abetting" theory is outdated and misplaced.** Plaintiffs' Opposition makes clear that they seek to rely on an aiding and abetting theory. (See Opp'n ¶¶ 30, 37, 43, 45, 55, 56.) The Supreme Court, however, squarely rejected such a claim in

---

[3] In defense of their Section 10(b) claim based on the January 2006 Barron's article, Plaintiffs argue that the two-year statute of limitations should be tolled because they "were not aware of facts at the time when this article was published and it was also not known that this is result [sic] of proper planning, assistance and collusion with other Defendants." (Opp'n ¶ 35) Plaintiffs have not identified any "facts" that they supposedly learned after the publication of the Barron's article concerning the Financial Institution Defendants' "proper planning, assistance, and collusion." The only "facts" alleged by Plaintiffs—the publication of the Barron's article and the presence of SulphCo stock on the Reg. SHO Threshold List— were known to Plaintiffs in January 2006, and yet the Complaint was not filed until April 2009, more than three years later.

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994), "hold[ing] that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." As authority for their unfounded theory, Plaintiffs attempt to rely on some unspecified decision in the Enron litigation permitting the suit against the defendant banks to proceed. (Opp'n ¶¶ 31-32.) That reliance is misplaced. Following the Fifth Circuit's decision in Regents of the University of California v. Credit Suisse First Boston (USA), Inc., 482 F.3d 372 (5th Cir. 2007), and the Supreme Court's decision in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008), the Enron court granted the banks' motion for summary judgment on the ground that the banks, as secondary actors, could not be liable under the securities laws. In re Enron Corp. Sec., Derivative & ERISA Litig., 610 F. Supp. 2d 600, 607 (S.D. Tex. 2009).

**4. Plaintiffs fail to allege market manipulation by any Financial Institution Defendant.** Despite repeating their blunderbuss accusation that "Defendants engaged in a massive, illegal stock market manipulation scheme" (Opp'n ¶ 12), Plaintiffs fail to identify any manipulative trades by any Financial Institution Defendants, as required to state a claim under Sections 9(a) and 10(b). Plaintiffs' Opposition points to no wash sales, matched orders, rigged prices or other alleged manipulative act intended to mislead investors. Instead, Plaintiffs again rely entirely on Exhibits A and B to the Complaint, which purport merely to show the price of SulphCo stock over time and the days on which SulphCo appeared on the Threshold List. (See id. ¶¶ 13, 14.) Plaintiffs argue that "taking a glance" at these Exhibits "clearly shows" market manipulation by the Financial Institution Defendants. (Id. ¶ 27.)[4] This is simply wrong. A stock's presence on the Threshold List "does not necessarily mean that any improper activity occurred or is occurring" because there are many reasons why a security might appear and

---

[4] Without providing the Court with a copy of any decision, Plaintiffs attempt to rely on a case pending in California state court "in which Overstock.com is Plaintiff." (Opp'n ¶ 2.) They argue that this case "shows that Financial Institution Defendants are habitual offenders and they should be punished." (Id.) The "Overstock.com case" involved different claims under California state law and different allegations concerning the stock of a different company, and thus has no relevance to the instant motion. Reference to an unrelated lawsuit in a different jurisdiction does nothing to support Plaintiffs' claims in this action.

remain on that list.  SEC, <u>Division of Market Regulation:  Key Points About Regulation SHO</u> (Apr. 11, 2005) (Decl. of Richard C. Pepperman, II Ex. D).

Moreover, attaching lists as exhibits does nothing to remedy Plaintiffs' utterly flawed Complaint.  Plaintiffs do not allege any facts that connect SulphCo's presence on the Threshold List and its declining stock price to any trades executed by the Financial Institution Defendants.  They instead offer only unfounded accusations and speculation.  As the Second Circuit held in <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 102 (2d Cir. 2007), "[g]eneral allegations not tied to the defendants or resting upon speculation are insufficient."  To survive a motion to dismiss, a complaint must state "roughly how many shares the defendants sold, when they sold them, and why those sales caused the precipitous drop in stock price."  <u>Id</u>. at 103.  Plaintiffs' Complaint fails to allege any of those facts, something Plaintiffs do not dispute.  This is fatal to Plaintiffs' market manipulation claims under Sections 9(a) and 10(b).

**5.  Plaintiffs do not adequately allege that the Financial Institution Defendants acted with scienter.**  Under the PSLRA, Plaintiffs must "state with particularity facts giving rise to 'a strong inference' that each defendant acted with scienter," an essential element of their claims under Sections 9(a) and 10(b).  <u>Edison Fund v. Cogent Inv. Strategies Fund, Ltd.</u>, 551 F. Supp. 2d 210, 228 (S.D.N.Y. 2008) (citation omitted).  Plaintiffs' Opposition demonstrates that they likewise rely almost entirely on Exhibits A and B to their Complaint to allege scienter  (<u>See</u> Opp'n ¶¶ 27, 38, 43.)  Nothing about those Exhibits, however, remotely connects the Financial Institution Defendants to any misconduct, much less gives rise to the requisite "strong inference" that each of them acted with scienter.  As the Supreme Court recently held, the inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 314 (2007).  The Financial Institution Defendants are nowhere mentioned in the Exhibits.  Those entirely benign charts come nowhere close to satisfying the PSLRA's requirements for pleading scienter.

Plaintiffs also argue that the Court can infer that certain unidentified "transactions were carried out with scienter because Defendants were having profits out of theses [sic] activity." (Opp'n ¶ 38; <u>see</u> <u>also</u> <u>id.</u> ¶ 41 ("Defendants engaged themselves in a series of transactions and

illegal Naked Short Selling of SulphCo stock for over a period of year [sic] and made profits . . . .").)  Leaving aside Plaintiffs' complete failure to identify any of the purportedly illegal transactions in which the Financial Institution Defendants supposedly engaged, a generalized motive to earn "profits" is insufficient to allege scienter.  See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 196-97 (2d Cir. 2008); Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996); In re Citigroup Auction Rate Sec. Litig., No. 08 Civ. 3095 (LTS), 2009 U.S. Dist. LEXIS 83046, at *19 (S.D.N.Y. Sept. 11, 2009).

With respect to the Barron's article, Plaintiffs assert, without any factual support, that "all Defendants knew" that the statements in Barron's were "false and immediately after publication of article they entered into series of transactions in high volumes and in the end failing to deliver on settlement day."  (Opp'n ¶ 45.)  The Opposition does not point to a single factual allegation suggesting that any Financial Institution Defendant was aware of the Barron's article, much less knew that it supposedly contained false statements.  And even if someone at one of the Financial Institution Defendants did know that the Barron's article contained a false statement, that fact alone would not give rise to a "strong inference" that any Financial Institution Defendant acted with an "intent to deceive, manipulate or defraud."  Tellabs, 551 U.S. at 314.  Generalized allegations of scienter directed at a group of defendants and based entirely on conclusory statements are insufficient to state a claim for securities fraud.  See In re NovaGold Res. Inc. Sec. Litig., 629 F. Supp. 2d 272, 304 (S.D.N.Y. 2009); Edison Fund, 551 F. Supp. 2d at 228.

**6. Plaintiffs do not allege facts sufficient to demonstrate injury in fact or loss causation.**  Plaintiffs do not dispute that their "Complaint does not identify which Plaintiffs sold [shares of SulphCo stock], how many shares were sold, when those shares were sold, the price they received, or whether those sales were at a loss."  (Opp'n ¶ 7.)  They instead argue that such allegations are "not appropriate at the initial stage of the case" and that they are "a matter of Discovery."  (Id.; see also id. ¶ 50.)  This is incorrect.  To survive a motion to dismiss, Plaintiffs must "allege facts indicating the economic loss they claim to have suffered."  Joffee v. Lehman

-6-

Bros., Inc., 410 F. Supp. 2d 187, 192 (S.D.N.Y. 2006).[5] They have not even attempted to do so here, notwithstanding that all of the information concerning Plaintiffs' transactions in SulphCo stock is plainly available to them and thus need not await discovery. Nor can Plaintiffs defeat this motion simply by proclaiming that they have "claimed damages, both general and special, in the amount of One Billion Dollars." (Opp'n ¶ 46.) Leaving aside the facially incredible notion that these twelve individual SulphCo shareholders could have suffered damages "in the amount of One Billion Dollars" based on their investment in a company with a market capitalization far less than that amount, Plaintiffs have alleged absolutely no facts to support this outlandish damages claim. Because Plaintiffs have not adequately alleged that they suffered any economic injury, they also have failed to allege loss causation, a requisite element of their federal claims. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005).[6]

       **7. Plaintiffs' rehashed allegations of reliance are still defective.** Plaintiffs argue that "the SulphCo stockholders relied on the misstatement of Defendants which was published in the [Barron's] article and relying on that they started selling the stocks." (Opp'n ¶ 18.) They also assert that Plaintiffs' decisions to sell or hold their SulphCo shares were "influenced by Defendants [sic] conduct." (Id. ¶ 54.) As an initial matter, Plaintiffs have not identified any statement, much less a misstatement, by any Financial Institution Defendant in the Barron's article. More fundamentally, Plaintiffs' mere say-so in their Opposition that they relied on that article or were "influenced" by the Financial Institution Defendants' conduct, without anything more, is insufficient to allege reliance, which is fatal to all of Plaintiffs' claims under the federal securities laws. Nor can Plaintiffs avail themselves of a presumption of reliance. (Id. ¶ 53.) The

---

[5] Plaintiffs' Opposition concedes that some undefined number of Plaintiffs still hold their shares of SulphCo stock. (Opp'n ¶ 54.) Those Plaintiffs who "decided to hold the stock" have not suffered any injury that is cognizable under the federal securities laws. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 754-55 (1975).

[6] Plaintiffs contend that Dura is "not applicable to Plaintiffs' case" because "Plaintiffs are claiming deflated price of stock." (Opp'n ¶ 47.) This is a distinction without a difference. Dura requires a plaintiff to allege a "causal connection between the [alleged manipulation or] material misrepresentation and the loss" regardless of whether the alleged loss is based on an inflated or deflated share price. Dura, 544 U.S. at 342.

Complaint does not allege that any Financial Institution Defendant had a duty to disclose a material fact, but failed to do so, or that Plaintiffs purchased their SulphCo shares in an efficient market.

**8. Plaintiffs' Section 9(a) claim fails for additional reasons.** Beyond their failure to allege scienter, injury in fact, loss causation and reliance, Plaintiffs also have failed to satisfy other threshold requirements of Sections 9(a)(1) and 9(a)(2).

Plaintiffs acknowledge that they must allege "a wash sale or matched orders in a security" to state a claim under Section 9(a)(1). (Opp'n ¶ 23.) They assert, however, that "the dates on which Naked Short Selling took place" are "clear proof of existence of wash sales and matched orders." (Id.) This assertion is incorrect. Neither the Complaint nor Plaintiffs' Opposition identifies any dates on which any Financial Institution Defendant was involved in "naked" short sales of SulphCo stock. Further, Plaintiffs' unsupported claim that "naked" short sales alone are "clear proof" of wash sales and matched orders is erroneous. A wash sale is a "sale of securities made at about the same time as a purchase of the same securities . . . resulting in no change of beneficial ownership." Black's Law Dictionary 1456 (9th ed. 2009). A matched order is an "order to buy and sell at the best price immediately available on the market." Id. at 1208. Wash sales and matched orders are not the same things as "naked" short sales.

Plaintiffs also concede that they must allege "a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security" to state a claim under Section 9(a)(2). (Opp'n ¶ 24.) Plaintiffs contend that they have satisfied this element of Section 9(a)(2) "through Exhibits A & B of the subject Complaint." (Id. ¶ 24.) Those Exhibits, however, purport to show nothing more than the price of SulphCo stock from 2004 through 2007 and the Reg. SHO Threshold List for selected dates in 2005 and 2006. They do not identify any transactions in SulphCo stock, much less tie any of the Financial Institution Defendants to those transactions, which is fatal to Plaintiffs' claim under Section 9(a)(2).

**9. Plaintiffs have abandoned their Section 18 claim.** As the Financial Institution Defendants explained in their opening memorandum, to state a claim under Section 18, "a plaintiff must plead that 'a document filed with the [SEC] contains a material misstatement or

omission.'" (Defs.' Mem. at 12 (quoting Ross v. A.H. Robbins Co., 607 F.2d 545, 556 (2d Cir. 1979)).) Plaintiffs offer no response to this argument in their Opposition and make no attempt to identify any SEC filing that supposedly contained a material misstatement or omission. Indeed, Plaintiffs' Opposition does not mention Section 18. Such silence should be deemed abandonment of that claim. See Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

**10. Plaintiffs do not adequately allege control person liability under Section 20.** In their Opposition, Plaintiffs appear to confuse control person liability under Section 20 with aiding and abetting liability under Section 10(b). (See Opp'n ¶¶ 55-56.) As to the former, Plaintiffs must allege facts to support the allegation that the Financial Institution Defendants "controlled" a primary violator of the securities laws and "culpably participated" in such a violation. See Edison Fund, 551 F. Supp. 2d at 231 (dismissing Section 20(a) claim where plaintiffs "do not allege particularized facts as to [defendant's] participation in the fraud"); Cohen v. Citibank, N.A., 954 F. Supp. 621, 630 (S.D.N.Y. 1996) (dismissing Section 20(b) claim because that section "requires a showing that a controlling person knowingly used the controlled person to commit the illegal act."). Plaintiffs allege no such facts. As to the latter, as explained in Section 3 above, "a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." Central Bank of Denver, 511 U.S. at 191.[7] Plaintiffs' Section 20 claim therefore also should be dismissed.

**11. Plaintiffs' state-law claims should be dismissed.** Plaintiffs' Complaint relies entirely on diversity of citizenship as the basis for jurisdiction over their state-law claims. (Compl. ¶ 33.) In their Opposition (Opp'n ¶¶ 57-60), however, Plaintiffs completely abandon diversity of citizenship as a ground for jurisdiction and rely instead on supplemental jurisdiction, even though that alternative basis for jurisdiction has not been pled in the Complaint. (See Compl. ¶¶ 33-35.)

---

[7] Plaintiffs' reliance (Opp'n ¶ 55) on a decision in an action brought by the SEC (as opposed to a private plaintiff) and on a decision that predates Central Bank of Denver is misplaced.

Although courts typically decline to exercise supplemental jurisdiction over state-law claims when all federal claims are dismissed before trial, Plaintiffs' state-law claims here are so facially meritless that the Court should exercise its discretion to reach the merits of those claims and dismiss them under Rule 12(b)(6) for failure to state a claim.  (See Defs.' Mem. at 24-25.)  In their Opposition, Plaintiffs fail to address any of the Financial Institution Defendants' arguments in support of dismissal of Plaintiffs' state-law claims.  (See Opp'n ¶¶ 57-60.)  Indeed, Plaintiffs offer not a single word in defense of the sufficiency of their allegations under state law, except to quote the now-retired "no set of facts" language from Conley. (See Opp'n ¶ 60.)

**12. Plaintiffs' request to amend their Complaint should be denied because any amendment would be futile**.  At the end of their Opposition, Plaintiffs request permission to amend their Complaint, yet they do not say what additional factual allegations they would include in a second amendment.  (See Opp'n ¶ 64.)  To the contrary, Plaintiffs freely acknowledge earlier in their Opposition that they "have provided all the information and evidences [sic] which are in their possession."  (Id. ¶ 6.)  In view of this statement and Plaintiffs' failure to identify any additional facts that could be pleaded, any amended complaint in this case would undoubtedly contain the same conclusory statements and naked assertions found in Plaintiffs' prior complaints, which are insufficient to state a claim.  Because any amendment would be patently futile, leave to replead is not appropriate.  See In re Nokia Oyj (Nokia Corp) Sec. Litig., 423 F. Supp. 2d 364, 410 (S.D.N.Y. 2006).

## CONCLUSION

Plaintiffs cannot state a claim against any of the Financial Institution Defendants simply by noting that SulphCo was on the Reg. SHO Threshold List for more than a year and that the price of SulphCo stock dropped following the publication of the Barron's article in January 2006.  For the foregoing reasons, as well as those set forth in the Financial Institution Defendants' opening memorandum, the Complaint should be dismissed in its entirety with prejudice and without leave to replead.

Dated:   January 25, 2010

| | |
|---|---|
| /s/ Robert F. Wise, Jr. | /s/ Richard H. Klapper |
| Robert F. Wise, Jr. | Richard H. Klapper |
| William J. Fenrich | Richard C. Pepperman, II |
| DAVIS POLK & WARDWELL LLP | SULLIVAN & CROMWELL LLP |
| 450 Lexington Avenue | 125 Broad Street |
| New York, New York  10017 | New York, New York 10004 |
| Telephone:  (212) 450-4000 | Telephone:  (212) 558-4000 |
| robert.wise@davispolk.com | klapperr@sullcrom.com |
| william.fenrich@davispolk.com | peppermanr@sullcrom.com |

*Attorneys for Defendant Morgan Stanley & Co. Incorporated*          *Attorneys for The Goldman Sachs Group, Inc.*

| | |
|---|---|
| /s/ Stephen L. Ratner | /s/ Andrew J. Frackman |
| Stephen L. Ratner | Andrew J. Frackman |
| Harry Frischer | Brendan J. Dowd |
| Brian L. Friedman | Benjamin D. Petrosky |
| PROSKAUER ROSE LLP | O'MELVENY & MYERS LLP |
| 1585 Broadway | 7 Times Square |
| New York, New York  10036 | New York, New York  10036 |
| Telephone:  (212) 969-3000 | Telephone:  (212) 326-2000 |
| sratner@proskauer.com | afrackman@omm.com |
| hfrischer@proskauer.com | bdowd@omm.com |
| blfriedman@proskauer.com | bpetrosky@omm.com |

*Attorneys for Defendants J.P. Morgan Clearing Corp. and JPMorgan Chase & Co.*

*Attorneys for Defendants Banc of America Securities LLC and Merrill Lynch, Pierce, Fenner & Smith Inc.*

| | |
|---|---|
| /s/ Fraser L. Hunter, Jr.<br>Fraser L. Hunter, Jr.<br>Brad E. Konstandt<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>399 Park Avenue, 31st Floor<br>New York, New York  10022<br>Telephone:  (212) 230-8800<br>fraser.hunter@wilmerhale.com<br>brad.konstandt@wilmerhale.com<br><br>*Attorneys for Defendant Credit Suisse (USA), Inc.* | /s/ Gregory A. Markel<br>Gregory A. Markel<br>Martin L. Seidel<br>Peter J. Isajiw<br>CADWALADER, WICKERSHAM & TAFT LLP<br>One World Financial Center<br>New York, New York  10281<br>Telephone:  (212) 504-6000<br>greg.markel@cwt.com<br>martin.seidel@cwt.com<br>peter.isajiw@cwt.com<br><br>*Attorneys for Defendant Deutsche Bank Securities Inc.* |
| /s/ Andrew B. Clubok<br>Andrew B. Clubok<br>Jeffrey G. Landis<br>Beth A. Williams<br>Daniel J. Gomez<br>KIRKLAND & ELLS LLP<br>655 15th Street, NW<br>Washington, D.C. 20005<br>Telephone: (202) 879-5000<br>Andrew.Clubok@kirkland.com<br>Jeffrey.Landis@kirkland.com<br>Beth.Williams@kirkland.com<br>Daniel.Gomez@kirkland.com<br><br>*Attorneys for Defendant UBS Securities, LLC* | |